Ladies and gentlemen, please rise. This Honorable Appellate Clerk of the 30th District of the State of Illinois is now in session. This Honorable Appellate Clerk, please have your brief guidance. Please be seated. Thank you. Will the clerk please call the first case. Case 25-0KCM, F&E Solar Illinois, U.S.S. Middle Solar LLC, U.S.S. Aerotelco, Solar LLC by Robert Miller v. County of Grundy. You may proceed.  Good morning, Your Honors. May it please the Court, I'm Curt Astruth on behalf of Grundy County. Your Honors, I'd like to begin by reiterating what we see as the main issue in this case. Whether or not mandamus was an available remedy to compel the elected county board to issue plaintiffs' special use permits. Mandamus is an extraordinary remedy that's only available to compel a ministerial action by a public officer. Mandamus is never available if the decision involves any exercise of discretion. That's the issue in this case. The sole remedy sought by the plaintiffs in their complaint was a writ of mandamus. So the question then becomes, was the county board's decision to approve or deny their special use permit applications a matter of legislative discretion, or was it now this perfunctory check-the-box ministerial action? We think the law is clear that the county board's decision on any zoning application, including a special use permit for a solar farm, is inherently a legislative discretionary action. And that discretion means that mandamus simply is not an available remedy in this case. So I'd like to start with kind of the background, the status quo of how zoning decisions were made by counties prior to the adoption of the solar amendments. So for over 60 years, legislative decisions have been reviewed under the framework of the LaSalle factors. If somebody challenged a decision of a county board to approve or deny any zoning application, that challenge would be viewed by courts through the lens of the LaSalle factors. That standard, this legislative decision standard, was expressly incorporated into the county's code in Section 5-12012.1. And that section provides that any decision of a county board on any zoning application, including a special use permit, is a legislative decision subject to de novo judicial review. And the way that legislative decision, that de novo judicial review, is applied by the courts is through the lens of those eight LaSalle factors. Again, we have over 60 years of case law holding that this is how courts review these decisions. Any decision by the county board could be subject to attack on a rational basis grounds that it's arbitrary. And if that attack was challenged, the courts would look to LaSalle factors. The county, therefore, had to consider those LaSalle factors when making any zoning decision. Not only does the county's code require that, but case law requires that as well. So we think it's clear that the county's decision to deny their special use permits, just as their decision had been to approve those special use permits, was a legislative decision. And that legislative decision had to be reviewed under the LaSalle factors. Now, beyond the clear basis that the county's decision was legislative in nature, therefore inherently discretionary, is the case law governing special use permits specifically. Now, this is, I'm going to quote from LaSalle National Bank v. Lake County, because we think this language is really important to the county's argument here. The granting of a special use permit is not merely a ministerial function of a legislative body. Rather, whenever a special use is proposed, a legislative body must make an independent determination that the particular use in the proposed location is designed in such a ways to be compatible with the surrounding area. Whether a special use is compatible depends on the circumstances of each case. So we have clear case law here that says a decision on a special use permit is not a ministerial action. And because it's not a ministerial action, it's inherently discretionary. And because it's not ministerial, because there is discretion involved, mandamus can't be an available remedy to compel a legislative body to exercise that discretion one way or another. That's the crux of this case, Your Honors. Now, that's the case law prior to the Solar Amendments. The county's decision to approve or deny a special use application is legislative in nature. It's reviewed when it's challenged. It's challenged generally for arbitrary substantive due process concerns. It's reviewed in light of the LaSalle factors. And a special use permit specifically is not a ministerial action. It's inherently discretionary. So now we look to the Solar Amendments themselves and what impact did the Solar Amendments have on this clear legal standard for how these zoning decisions are reviewed. We don't think the Solar Amendments changed that standard. The plaintiffs argue that the Solar Amendments have essentially pushed the legislative decision standard to the side, that courts must ignore the 60 years of precedent that the LaSalle factors have to be considered, and that this term special use permit means something entirely different now in this statute. That's not the case, Your Honors. So looking to the Solar Amendments themselves. Why is it not the case? I think the biggest, clearest indicator that that is not the case is the fact that the legislature, when they enacted the Solar Amendments, they allowed counties to designate solar facilities as special uses. If the legislature intended to make this a perfunctory process, that you check these boxes, you obtain approval no matter what, the legislature would have simply said, solar facilities have to be permitted uses by right in these districts, and that's it. By using the term special use, the legislature had to understand that special use has its plain and ordinary meaning under the law. And that plain and ordinary meaning is that a special use is an inherently discretionary decision. It is that case-by-case, factual, individual determination that involves the exercise of discretion. So when the legislature allowed counties to designate solar facilities as special uses, they acknowledged that counties would be exercising discretion to determine whether or not each location was appropriate for a solar farm based on those standards and the LaSalle factors that are always going to apply to any legislative zoning application. Counsel, how do you square this notion that they maintain discretion with the language in the statute that says, shall be approved? That's a great question, Your Honor. I think the main issue there is, if the legislature had said, if a solar facility application meets the requirements of this section, it shall be approved, I think Vandamus may be an available remedy. I will concede that. I think the issue is that the way the legislature drafted that section, it first, again, acknowledged that a special use permit is available, which inherently involves the exercise of discretion. And then it said that a special use permit shall be approved if the request is in compliance with the standards and conditions imposed in this act. This act means the county's code. It doesn't mean the solar limits. But there's no discussion of discretion in the statute, right? Justice Anderson, I think there is no specific discussion of discretion in the statute. I think the fact that they've allowed counties to, one, designate solar facilities as special uses, and two, allow counties to enact their own local solar facility regulations, so long as they're not more restrictive, so long as they don't entirely prohibit solar facilities, inherently, if they can enact their own regulations, they're going to have the discretion to make a decision of whether or not those local regulations have been met or not. So we certainly understand that the language shall be approved, but it does say, shall be approved in compliance with the standards imposed in this act. That's the county's code entirely. That's the legislative decision standard that says it's reviewed as a legislative decision, de novo judicial review, with self-factors come into play. Further, that language shall be approved to the extent we think that could be the one area of the solar amendments that has any ambiguity to what that means. If there is any ambiguity in the statute, we look to the legislative history as an aid for interpretation. The legislative history is very clear that the sponsors of this legislation intended for local control to remain. One of the sponsors said that the counties will have the final say on the zoning. So if the legislature intended for this to be a perfunctory rubber stamp process, that we're just checking boxes, and if they meet the boxes, that's it, why would the sponsors of the bill say that we want local control to remain? Why would they have said that the ultimate say remains with the elected county boards? How does that square with Senator Resn's summary at the end of that colloquy? I can't even say it, sorry. How does that square with, and she's the opposition in this bill, just for the record. You're both making arguments based on legislative history. And legislative history, it's been said it's like walking into a cocktail party and looking for your friends. You look for what you like. I think the way that we interpret the legislative history is that the theme throughout is that local control will remain. That the solar amendments put guardrails in effect. They don't preempt local control entirely. There are several comments that say we're not taking this away and making this a state-mandated siting process. That local process will remain, that local input will remain. And to the question about the Senator Resnick's comments, I think if you read that comment entirely, because in the plaintiff's response they didn't quote the entire response. The question was, could they deny an application? I apologize, I'm trying to pull that up here. Localities, and this is what Senator Resnick said, and it's in the record, C709 to C710. As I mentioned, there will still be local input. Localities can still put ordinances in effect. Localities can still have those hearings that were mentioned. In fact, there's language in the law talking about those hearings. This will still happen, so local control will remain. At no point in any portion of the legislative history did they say that a county will never be able to say no if you check the boxes of the state law. But if that was the intent of the legislature to say, if you meet these technical requirements in the Solar Amendments, the county can't say no, what local control will remain? What local input would be there? It would simply be a, let's see, have you checked each of these boxes? If so, all we have to do is say yes, rubber stamp. What local input would remain? So looking at the comments from the sponsors of this bill alone and their interpretation that local control and local input has to be involved, that supports the reading that the way those Solar Amendments are structured overall includes that discretionary decision by a county board. Again, if it's a special use, we have to give the term special use some meaning. And the only meaning that we can give it is its plain and ordinary meaning under the law. Is special use defined somewhere in the statutes? Special use is defined in the County's Code, Your Honor, and I can provide you that definition here. It's not provided in the Solar Amendments. It's defined in the County's Code, Section 12009.5. The county board may, by ordinance. I'm sorry, I thought you spoke faster than I did. Yes, certainly. What's the section number? It's 5-12009.5a. The county board may, by an ordinance passed under this division, provide for the classification of special uses. Those uses may include, but are not limited to, public and quasi-public uses affecting the public interest, uses that have a unique, special, or unusual impact upon the use or enjoyment of neighboring property, and uses that affect plan development. A use may be permitted in one or more zoning districts. It may be a special use in one or more zoning districts. So even the County's Code definition implies that there's going to have to be this case-by-case determination. Is this special use appropriate? Is it going to have a unique, special, or unusual impact upon the use of neighboring property? That's the whole basis of what a special use and zoning decisions are, is what's the impact going to be on the neighboring property? Is this use consistent? That decision, when it's a legislative decision, is inherently discretionary. And the law is clear that a special use is not a ministerial act. We've been unable to find any case law in Illinois where a court has held that a special use permit can be subject to mandamus. We've actually been unable to find any case in Illinois law where a court has compelled a legislative body to enact a zoning regulation. So we think that the term special use in the Solar Amendments clearly implies that the legislature knew there was going to be local discretion as to each of these local siting facilities. The Solar Amendments there, and I'm using the terms of the sponsors here, are guardrails. They put in how restrictive the zoning can be. They don't usurp that entire permitting process, that entire local control. The fact that the legislature allowed counties to enact their own regulations, the fact that they delegated that discretion to the counties to say, you can enact your own solar facility regulations, but they can't be more restrictive, and they can't entirely prohibit solar farms. That delegation of authority indicates that the legislature wasn't entirely preempting the field here. They knew counties were going to exercise discretion on how these solar farms should work in their counties, and that this wasn't going to be a statewide regulatory system. You meet these standards, a county is simply there to check the box. That's not what a special use is. That's not what a legislative zoning decision is. And that's certainly not what the legislative history shows the intent of the legislature was. I'd like to finish by noting that mandamus, it's an extraordinary limit. It's never available in a doubtful case. Further, mandamus can't be used to compel a public official to reach a particular decision, to exercise their discretion in a certain way, even if that judgment was erroneously used. Mandamus is an extraordinary remedy. It's never available in a doubtful case. At best, that one portion of the solar amendments that says, maybe it leads to some ambiguity about the legislature's intent. Maybe the legislative history, certainly the comments that local control should remain, we don't think implies any other intent. But if there is any doubt, mandamus is never an available remedy. Thank you, Your Honor. Just a moment. Any questions from the bench? Not at this present. No. Okay. You'll have time to reply. Thank you, Your Honor. Counsel, you may respond. Good morning, Your Honors. Robert Middleton on behalf of Equity Solar Illinois, USS Middle Solar, and USS Saratoga Solar. May it please the Court. The question before this Court— Counsel, I'm sorry. Before you get into the substance of your argument, I have sort of a procedural standing question. I think USS Middle Solar and USS Saratoga Solar, they were the applicants, right? Correct. And when I look at the complaint, it says Equity Solar, quote, owns the projects. I don't quite know what that means. I don't know what standing Equity Solar has and what they're looking for from us. And I think that's the only reference to Equity Solar in the entire complaint is they own the projects. What does that mean? They own the land? Thank you, Your Honor. Yes, they own the—they would own the solar facility, and they would be responsible for the relationship. They coordinate with, for instance, the Illinois Solar Block Program, and they own the projects, but the projects are then— You're answering my question about my question. Yes. They own the projects. Yes. I'm just trying to determine whether they have any standing for anything. I don't know what they do. There's really no reference to them. Go ahead and get on with the substance of your argument. Thank you, Your Honor. The question before this court is whether a county may deny a solar siting special use permit to an applicant that meets the requirements of Section 512020 of the Illinois County's Code on the basis of standards outside of that section. We argue that the answer is plainly no. Subsection B of Section 512020 establishes that Section 512020 includes the most restrictive possible requirements that a county may adopt, and Subsection G requires that an application meeting a county's ordinance and the standards adopted under Section 512020, quote, shall be approved. On that question, whether to approve or deny a permit application that meets the requirements of Section 512020, the county has no discretion. Here, there is no dispute on whether the application met state requirements, and there is no question that the county has the authority to issue permits. Accordingly, mandamus is appropriate, and we respectfully request that this court affirm. The county has tried to muddy the waters by arguing that it must have more authority than detailed in Section 512020 because a special use permit is a legislative determination. This is largely a red herring. The county relies on Section 512012.1, which establishes that for the purpose of judicial review, a zoning decision can be reviewed as a legislative decision. This section does not require that substantive due process is the only form of review available, nor has the Illinois Supreme Court nor this court held otherwise. In fact, any other holding would run afoul of this court's holding in Hickory Wind, where the court assessed, reviewed a special, apologies, reviewed an amendment to a zoning ordinance, which would plainly fall within the confines of Section 512012.1, and the court first looked at whether the zoning amendment violated, exceeded the village's statutory authority, and found that it did, and then looked at whether the zoning amendment ran afoul of Illinois's stated public policy, and again found that it did. This court found that that zoning amendment was invalid on those bases and never reviewed for substantive due process. Section 512020 establishes a process through which counties have clear discretion to choose whether to regulate solar siding, to choose which requirements of Section 512020 to adopt, to choose how restrictive to make those requirements. They could go as restrictive as Section 512020 or adopt something lesser, and they could also choose whether to make the process a special use permit or some other sort of proceeding. Where an applicant meets those requirements of Section 512020, subpart G requires approval. The county cannot explain the purpose of this language if it does not establish a mandate to approve the application where it meets all of the requirements. But because these are special use permits, the county still has discretion to add conditions to the permit. So approval is mandatory, but they can add conditions that are, quote, reasonably necessary. In the section of the county's code detailed by Mr. Asproof, Section 512009.5, a county may add conditions that are, quote, reasonably necessary to meet the standards of the ordinance or of the statute. So here the county did take that discretion. After the circuit court issued its final order, the county added conditions to the permits before they issued them. And they added conditions specifically aimed at some of the concerns they had about the permits. So, for instance, the county issued permits barring battery storage on site. And that was one of the bases for denying the permits in the first place. There was concern over the safety of battery storage facilities. So the county, in issuing its permits, specifically barred the use of battery storage. I'm not going to argue that that's a proper use of that discretion, but it illustrates that even under the county's read, they understand that counties have discretion. After the approval process, they have discretion to add permit conditions. If they have discretion, then how is it still a mandate in this case? Because the discretion is isolated to the situations I outlined in terms of making the ordinance, choosing the requirements of the ordinance, and then adding conditions on the back end. But the statute is clear in subsection G, on the issue of approval, they do not have discretion. So that is why mandamus is available, because we can seek approval of the special use permit application via mandamus. So you're saying they have discretion to impose these conditions, but they don't have discretion to deny the permit application. As long as it meets the discretionarily imposed requirements. Correct, Your Honor. And the limit on those conditions is in that section 12009.5 of the county's code. That details that they must be reasonably necessary to meet the conditions of the ordinance. So there is a larger restriction on the use of those. The counties also cannot use the LaSalle factors as a basis for denial under Section 5.1.2020, especially because the LaSalle factors and consideration of the LaSalle factors is not required by Section 5.1.2020, or in this case under the Grundy County Code. Indeed, there is significant overlap between the requirements of Section 5.1.2020 and the LaSalle factors. This indicates that the legislature already took into consideration many of the concerns in the LaSalle factors and made determinations as to how to apply them. For instance, the Section 5.1.2020 states that, in subpart H, a county cannot preclude the development of solar facilities on agricultural land or industrial land. So there the concern of neighboring uses that is common in the LaSalle factors was taken into consideration by the legislature, and they determined that an agricultural or industrial use is a proper use for a solar facility. Additionally, there are other LaSalle factors that specifically detail concerns with neighboring uses. Section 5.1.2020 looks at this in terms of setback requirements, fencing requirements, erosion requirements, flooding requirements, how the applicant can be required to pay for road usage. It takes into consideration how the facility will impact the neighboring land and it made decisions as to how to handle those concerns. Additionally, there are indications in Section 5.1.2020 that, as I just alluded to, a county may use the LaSalle factors to the extent they're built into their ordinance to set conditions on special use permits. So Subsection K details that a county may not condition a permit on a property value guarantee or on a requirement that an applicant pay into an escrow fund for property devaluation of a neighboring property. So this plainly indicates that the legislature considered how the LaSalle factors, or how some of them at least, might play into these questions, and they determined that there should be guidelines placed on how this LaSalle factor can be used in order to set conditions on a permit. And it would be inconsistent for the legislature to allow a denial on the basis of a LaSalle factor, while at the same time severely restricting its use as a permit condition. In addition, the LaSalle factors look at consistency with a comprehensive plan. In Living Word, the Illinois Supreme Court specifically looked at a comprehensive plan in the ordinance and determined that the comprehensive plan cannot control over an ordinance. There, a church was trying to apply for a special use permit, and under the local ordinance, they met the standards for the special use, and the area that the church wanted to expand to was explicitly allowed a special use for churches. However, the city denied the permit application on the basis of compliance with a comprehensive plan. And the Illinois Supreme Court looked at this as both an administrative decision and a legislative decision, because this was prior to Section 5120.12.1, and it determined that no matter which way it looked at it, the outcome was the same, because a comprehensive plan is not law. It is an advisory document, and it cannot supersede state law. So here, in this case, we have a situation where the county largely deferred to the city of Morris's comprehensive plan, and its aspirational use for the property at issue, and determined that because Morris had aspirational uses for this property, they could deny the special use permit. So that puts the comprehensive plan above both the local ordinance and the state statute. Further, the county's interpretation here is untenable. It would allow a county to adopt restrictions as long as they don't overlap explicitly with the requirements of Section 5120.20. For instance, a county could require a solar facility to only generate for one day a week, or allow that a Costco facility that the county wants gets a veto over the land use. And it's difficult to see how a county can afford meaning to Section 5120.20b's limit on more restrictive requirements if it does not limit those requirements to those detailed in Section 5120.20. Further, the, allowing the board, so the, here the local ordinance did not require consideration of the LaSalle factors. It did require consideration of certain factors that, including health, safety, and general welfare. But these factors are, as I have detailed with the LaSalle factors, largely incorporated into Section 5120.20's requirements. Section 5120.20 is about moving the state towards the stated goal of 100% renewable energy. And the legislature determined that one of the ways to do that was to set up explicit limits on a county's ability to regulate solar siting in the state and wind siting in the state. And so they already took into consideration health and safety. And again, as with the neighboring uses issue, they took into consideration how the solar facility would interact with the neighbors. They set fencing requirements, siting requirements, setback requirements. They took all these things into consideration already. And for the board to then deny a permit on the basis of these same kind of considerations would be an end run around Section 5120.20 and supplant the legislature's determinations. Your Honors, we respectfully request that you affirm. Okay. Thank you, Your Honor. Thank you, Counsel. Hold on. Any questions from the bench? Yeah, I have maybe one or two. Counsel, what I'm frankly struggling with is the suggestion by the legislature that the vehicle that a county board might use would be a special use under a county ordinance and the position taken by the trial judge, and in your briefs obviously, seems inconsistent with our traditional special use jurisprudence. And I'm struggling with that. And I know that you suggested one, and it escaped me when you were saying it. But can you give me an example, other than a de minimis regulation like fencing or vegetative screening or going from 50 to 25 feet set back that a county might put in place under a special use that would pass muster under the statute? Yes. Your Honor, they could require certain types of vegetative screening. They could require certain types of financial assurance. There's financial assurance built into Section 512020 for decommissioning especially. So there's a concern of the projects just being left on site after they're no longer operational. So they can set specific financial assurance requirements. They, as you mentioned, have setback, some authority on setbacks, and they could require potentially different types of fencing. And the vegetative management plan and vegetative cover plans can be tailored to meet the needs of the local community. And that could help with things like erosion and flooding. And they could require certain considerations to be taken when developing the site to reduce those things, flooding and erosion. So the county can impose certain conditions. Obviously, the county didn't in this particular case because it denied the permit outright, correct? Initially, that's correct. But then when the permits were issued pursuant to the district court's order, the county did add dozens of conditions. Okay. So they did take that. And I do want to point to Section 512009.5, which is the county code's discussion of special uses. And there, the discussion of special uses makes it clear that the requirements are that a special use be, that there be a demonstration that it meets all of the local requirements, that there are public hearings, and that the county can add conditions on the basis of, that are reasonably necessary to meet the requirements of the ordinance. So based on the feedback from public hearing, they could implement certain requirements for the items we just discussed. And there, they have that kind of discretion on the back end that we've also discussed. And did the county engage in such discretion in this case or not? Yes, when it issued the permits. Okay, thank you. Any further questions? No, thank you. Thank you, Council. Thank you, honorees. Counsel, you may reply. Thank you, honorees. I think I'd like to begin by noting first that Council of Appointees has admitted that discretion is involved in the county's decision-making process here, that the decision to approve or deny a special use or what conditions to impose on that special use involve the exercise of discretion. If discretion is involved at all, the law is clear that mandamus is not an available remedy. Mandamus is available, again, an extraordinary remedy for a ministerial perfunctory act. Check the boxes, that's it. If there's discretion involved, mandamus isn't available. And it can't be available to compel somebody to exercise that discretion one way or the other. So we think plaintiffs have just admitted that mandamus is not an available remedy. I don't think there's any way to distinguish between having discretion at some part of the decision for the conditions but no discretion to say no. If there's discretion involved, mandamus isn't available. And I think the discussion of the fact that the counties can impose conditions and that those conditions have to be reasonable, what's reasonable? That reasonable decision standard is precisely what a rational basis legislative review standard is. And what's reasonable is inherently going to involve an exercise of discretion. That's not something that can be reviewed as a ministerial perfunctory analysis. What's reasonable, of course, involves an exercise of discretion. So we think that the way that they have framed this, they've essentially admitted that discretion is involved and that mandamus simply isn't available here. They wanted to challenge the decision. They had other avenues. Mandamus simply isn't the appropriate remedy. I'd also like to do the discussion about the LaSalle factors and the legislative decision standard. So plaintiffs couch this as we can't, you know, we didn't apply the LaSalle factors correctly. And they talk about the comprehensive plans and things like that. That's not the issue before this case or before this court, Your Honors. It's was the decision discretionary and did it involve that exercise of discretion or was it perfunctory? Was it ministerial? We know that the county's decision to approve or deny a special use permit is a legislative decision. It's subject to that legislative decision standard. And that legislative decision standard involves the application of LaSalle factors. So knowing that the county's decision could be challenged as a rational basis, under a rational basis decision-making framework, the county had to look to the LaSalle factors. If we had ignored them entirely, somebody could come in and challenge that decision and say, your decision is invalid. It's clearly a legislative decision. You clearly had to consider the LaSalle factors. How could we ignore those factors? If the legislature had intended to change the decision-making process on a solar permit to not include that legislative decision standard, they would have said so. But instead, they specifically said that the decision on a solar facility shall be approved if it meets the requirements of this act. This act is the county's code as a whole, including that legislative decision standard. I'd also like to reiterate that these more restrictive, the analysis of what conditions could be imposed that would be less restrictive or more restrictive. Again, the legislature authorized counties to come up with these additional conditions. They authorized counties to engage in that discretionary decision-making process to say, here's the additional restrictions we want to impose on solar farms. There's inherently discretion there. So they knew that counties were going to exercise their discretion and determine if those local standards had been met. The way that the legislative history reads, this was guardrails. You can't go outside of this. You can't regulate within this area. You can't prohibit them and you can't be more restrictive, but you have the ability to regulate solar farms within that framework. The ability to regulate doesn't necessarily involve a discretionary decision of whether or not those local standards have been met. I'd like to end by noting again that the term special use has to be given some meaning in the solar permits. We can't just ignore that term altogether. We have to give it its plain and ordinary meaning. That's well established in the county's code and in case law. If the legislature intended for this to be a perfunctory process, intended for there to be no discretion whatsoever, they never would have allowed counties to designate solar farms as special uses. They simply would have said you have to allow solar farms as a permitted use by right in the agricultural and industrial districts, and if they meet these requirements, you have to approve them. That's not what the legislature did. They said you can designate them as special use. And by allowing that special use designation, they acknowledged there was going to be local discretion exercise as to whether or not each location was right or proper for a solar farm. So, your honors, we believe that mandamus was not an appropriate remedy here. The decision necessarily involved the exercise of discretion, and we respectfully ask that you reverse the trial court's decision. Any questions? No, thank you. I have one other question. So, when a county board exercises its discretion to impose certain requirements, are those the requirements that the county board comes up with, are those uniformly imposed as to each application for a special use permit, or are there unique requirements for each applicant? Unique requirements for each applicant, your honor. That's the whole purpose of the special use process, is to say, we think this use is appropriate in this district, but this use might have unique or consequential impacts on the adjoining property, so we have to view it and analyze it on its specific terms. What's next to the property? Should we have a setback, or should we have some other type of individualized condition that's going to limit those adverse impacts? There's a quote from this court's decision in Knox v. Winn County. Nobody wants a sewage treatment plant next to a kindergarten. That's the whole analysis under a special use permit, is what are the individual facts of this case, the special facts of this particular application that we need to address to limit those impacts on adjoining properties? And that decision, that individualized decision, is always going to involve the exercise of discretion. That discretion would vary based on an application by, let's say, USS Middle Solar versus an application by Mike's solar panel. Certainly, your honor. What might be a reasonable condition in one application might be unreasonable in another. But again, that's an exercise of discretion by that elected county board to determine what they think is reasonable. So you're saying every tub rests on its own bottom. Pardon me, your honor? You're saying every tub rests on its own bottom. I think so. The process you just described is the same process historically utilized in special use before these amendments. For over 65 years, your honor. I think that's clearly the case law. That's how special uses are treated. That's the purpose of a special use. If a use is permitted by right, that's a determination by the county board that we don't need to go through any additional process. We know that type of use in this district is allowed. So in a commercial district, a restaurant doesn't require any additional hearings. It doesn't require any additional individual analysis. It's permitted by right. If it's a special use, that means there's been a legislative decision that it needs that individualized analysis. It needs that individual discretionary review to determine if it's appropriate in that location. So are you saying if indeed the intent of the legislature is what is argued by opposing counsel and generally by the group of solar energy folks or the policy we have in Illinois that we're going to be renewable by a certain date, that they should have just never mentioned special use? If that was their intent, if they wanted to make this a perfunctory process and that every county had their hands tied, you meet these standards, in these locations you get to go in, they never would have allowed counties to designate these as special uses. Thank you. Thank you, sir. Thank you very much. Thank you, counsel. Thank you, counsel, both, for your arguments in this matter this morning. It will be taken under advisement and a written disposition shall issue. At this time, the court will stand in recess for the next case.